## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MEYERS DIVISION

DAVID LANCE,

     Plaintiff,                   CASE NO.:

-VS-

DRIVETIME AUTOMOTIVE GROUP, INC.,
d/b/a DRIVETIME CAR SALES COMPANY,
LLC and BRIDGECREST CREDIT
COMPANY, LLC,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, DAVID LANCE, by and through the undersigned counsel, and sues Defendants, DRIVETIME AUTOMOTIVE GROUP, INC., d/b/a DRIVETIME CAR SALES COMPANY, LLC, (hereinafter "DRIVETIME") and BRIDGECREST CREDIT COMPANY, LLC, (hereinafter "BRIDGECREST") (referred to collectively hereinafter as "Defendants") and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like Defendants from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4.     According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

2.     This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

3.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

4.     Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See

*Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

5.      The alleged violations described herein occurred in Collier County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

6.      Plaintiff is a natural person, and citizen of the State of Florida, residing in Collier County, Florida

7.      Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

8.      Plaintiff is an "alleged debtor."

9.      Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10.      Defendant, DRIVETIME, is a corporation which was formed in Arizona with its principal place of business located at 1720 West Rio Salado Parkway, Tempe, Arizona 85281 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

11.      Defendant, BRIDGECREST, is a corporation which was formed in Arizona with its principal place of business located at 7300 East Hampton Avenue, Suite 101, Mesa, Arizona 85209 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

12.      DRIVETIME is a "creditor" as defined in Florida Statute §559.55(5)

13.     DRIVETIME consented to and has knowledge and control of the activities of their agents and representatives, supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors, including by not limited to BRIDGECREST.

14.     Upon information and belief, DRIVETIME, had knowledge of all actions (further described in the complaint) taken by its agents at BRIDGECREST, and specifically instructed and/or conspired with them to take such actions as were ultimately taken in regards to Plaintiff and Plaintiff's property.

15.     At all times material: DRIVETIME acknowledged that BRIDGECREST would act on behalf of DRIVETIME with respect to the conduct alleged herein; BRIDGECREST accepted said undertaking, and DRIVETIME retained control over the actions of its authorized agents.

16.     Upon information and belief, the aforementioned principal/agent relationship by and between DRIVETIME, as principal, and BRIDGECREST, as agent, was pursuant to an express agreement, implied agreement and or gratuitous undertaking.

17.     Neither DRIVETIME or BRIDGECREST disclosed to Plaintiff the principal/agent relationship by and between them, but is was nonetheless eventually clear that BRIDGECREST at all times material, acted as the agent on behalf of DRIVETIME with respect to their debt collection activities described herein.

18.     Defendants sought to collect a debt from Plaintiff that arose from a transaction incurred for personal, family or household purposes and therefore is a " consumer debt" as defined by Florida Statute §559.55(6).

19.    Defendants called Plaintiff on Plaintiff's cellular telephone hundreds of times in an attempt to collect an alleged debt.

20.    Defendants attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

21.    Plaintiff is the regular user and carrier of the cellular telephone number (908) ***-9965 and was the called party and recipient of Defendants' calls.

22.    Upon receipt of the calls from Defendants, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following telephone numbers: (877) 329-9029 and (803) 223-0842.

23.    Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that he knew it was an auto-dialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line and he received prerecorded messages from Defendants.

24.    On several occasions over the last four (4) years Plaintiff instructed Defendants' agent(s)/representative(s) to stop calling his cellular telephone.

25.    In or about June of 2017, and numerous other occasions, Plaintiff answered a call from BRIDGECREST to his aforementioned cellular telephone number, met with an automated message, held the line and was eventually connected to a live agent/representative, and informed

the agent/representative of BRIDGECREST that the calls to his cellular telephone were harassing and demanded that they cease calling his aforementioned cellular telephone number.

26.     Despite clearly and unequivocally revoking any consent BRIDGECREST may have believed they had to call Plaintiff on his cellular telephone, BRIDGECREST continued to place automated calls to Plaintiff.

27.     Each subsequent call BRIDGECREST made to Plaintiff's cellular telephone was knowing and willful and done so without the "express consent" of Plaintiff.

28.     Plaintiff's repeated requests for the harassment to end were ignored.

29.     Defendants intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

30.     Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

31.     Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as they did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendants to remove the number.

32.     Defendants' corporate policies are structured so as to continue to call individuals like Plaintiff despite these individuals explaining to Defendants they wish for the calls to stop.

33.     Defendants have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

34.     Defendants have numerous complaints across the country against them asserting that their automatic telephone dialing system continues to call despite requested to stop.

35.     Defendants have had numerous complaints from consumers across the country against them asking to not be called; however, Defendants continue to call the consumers.

36.     Defendants' corporate policies provided no means for Plaintiff to have his number removed from Defendants' call lists.

37.     Defendants have a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

38.     Not a single call placed by Defendants to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

39.     Defendants willfully and/or knowingly violated the TCPA with respect to Plaintiff.

40.     From each and every call placed without consent Defendants to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

41.     From each and every call without express consent placed by Defendants to Plaintiff's cellular telephone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the telephone was ringing from Defendants' calls.

42.     From each and every call placed without express consent by Defendants to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also

impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

43.     Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

44.     Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

45.     Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's telephone or network.

46.     Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

47.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, embarrassment, distress and aggravation, all of which further exacerbated the poor health of Plaintiff who is a Veteran on 100% disability.

48.

## COUNT I
### DRIVETIME AUTOMOTIVE GROUP, INC. d/b/a DRIVETIME CAR SALES COMPANY, LLC'S VIOLATION OF THE TCPA

49.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty seven (47) as if fully set forth herein.

50.     DRIVETIME willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified DRIVETIME that he wished for the calls to stop.

51.     DRIVETIME repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against DRIVETIME for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### DRIVETIME AUTOMOTIVE GROUP, INC. d/b/a DRIVETIME CAR SALES COMPANY, LLC'S VIOLATION OF THE FCCPA

52.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty seven (47) as if fully set forth herein

53.     At all times relevant to this action DRIVETIME is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

54.    DRIVETIME has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

55.    DRIVETIME has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

56.    DRIVETIME's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against DRIVETIME for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
## BRIDGECREST CREDIT COMPANY, LLC'S
## VIOLATION OF THE TCPA

57.    Plaintiff fully incorporates and realleges paragraphs one (1) through forty seven (47) as if fully set forth herein.

58.    BRIDGECREST willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified BRIDGECREST that he wished for the calls to stop.

59.    BRIDGECREST repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against BRIDGECREST for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

**COUNT IV**
**BRIDGECREST CREDIT COMPANY, LLC'S**
**VIOLATION OF THE FCCPA**

60.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty seven (47) as if fully set forth herein

61.     At all times relevant to this action BRIDGECREST is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

62.     BRIDGECREST has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

63.     BRIDGECREST has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

64.     BRIDGECREST's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against BRIDGECREST for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Amy M. Ferrera
Amy M. Ferrera, Esquire
Florida Bar No.: 15313
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
AMFerrera@ForThePeople.com
AFloyd@ForThePeople.com
*Attorney for Plaintiff*